IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ARTURO DELIZ-VELEZ, ET AL.,

     Plaintiffs,

        v.                                    Civ. No. 02-1869 (PG)

PUERTO   RICO   ELECTRICAL   POWER
AUTHORITY,

     Defendants.

<u>OPINION AND ORDER</u>

    Before the Court is Magistrate Judge Gustavo A. Gelpi's Report and Recommendation ("R&R")(Docket No. 378) regarding defendants' Motion for Summary Judgment (Docket No. 302.) For the following reasons the Court **APPROVES AND ADOPTS IN PART** the Magistrate Judge R&R and **GRANTS IN PART AND DENIES IN PART** defendants' motion.

<u>FACTUAL BACKGROUND</u>

    On June 10, 2002, Plaintiffs Arturo Deliz-Velez ("Deliz"), Evelyn Lymari Orengo-Gonzalez ("Orengo"), and the Conjugal Partnership Deliz-Orengo (jointly referred to as the "plaintiffs"), filed suit against defendants the Puerto Rico Electric Power Authority ("PREPA"), Hector R. Rosario ("Rosario"), Ramon L. Rodriguez-Melendez, Maria Mercedes Mendez-Rivera, Ana T. Blanes-Rodriguez ("Blanes"), Frederick Torres, and Luis Altuz (jointly referred to as the "defendants") claiming political discrimination, due process violations and hostile work environment for political reasons.

    Defendants moved for summary judgment on all claims (Docket Nos. 302, 303, & 305) and plaintiffs' timely opposed (Docket Nos. 323, 324, 325, 329, 330, 331, 332, 333, 336, 337, 342, 344, 345, & 346.)  The matter was referred to Magistrate Judge Gelpi who recommends granting in part and denying in part defendants' motion.(Docket No. 378.)   The parties have timely filed objections. (Docket Nos. 382, 383, & 390.)

    It is defendants' contention that plaintiffs have not made any allegations, other than the fact that plaintiffs and defendants belong to opposing political parties, to support their political discrimination claim. Furthermore, that Deliz' salary reduction of June 2001 was based on an

Civ. No. 02-1869(PG)                                                    Page 2

objective, non-discriminatory employment transaction study as in the case Colon Santiago v. PREPA, Civil No. 01-2722 (PG) where the Court concluded that the adverse employment transaction, based on said employment transaction study, was not politically motivated. Also, defendants claim that plaintiffs' allegations of hostile working environment do not amount to a constitutional violation under § 1983. Lastly, they argue that all defendants are entitled to qualified immunity.

To the contrary, plaintiffs insist they have brought forth evidence to create a triable issue of fact with regards to defendants' non-discriminatory reasons.  Also, that defendants are not entitled to qualified immunity and that the Court should be skeptical in its review of defendants' evidence as there are credibility issues that should be decided by a jury.

The Court has carefully reviewed the record and finds the following facts uncontested:

1. Plaintiff Deliz began working at PREPA in December 1993 as a Juridical Investigation I.  (Docket No. 305, Exhibit I; Docket No. 324, Exhibit 1; Docket No. 329, Exhibit 8.)  This initial appointment was a temporary managerial position. (Id.)

2.  On December 1994, Deliz became a conditional regular employee. (Docket No. 305, Exhibit 2 (a) and 2 (b); Docket No. 324, Exhibit 1; Docket No. 329, Exhibit 8.)

3. Effective on April 25, 1995 then Governor of Puerto Rico, Pedro Rosello, appointed Deliz as Executive Director of the Governor's Youth Affairs Office and thus, Deliz became separated without pay from his employment at PREPA through a Voluntary Separation. (Docket No. 305, Exhibit 3 and 4; Docket No. 324, Exhibit 2; Docket No. 329 Exhibit 8.)

4. On March 11, 1998 Deliz' voluntary separation was extended as per a request by PREPA's Executive Director. Deliz remained as Director of the Governor's Youth Affairs Office until 2000. (Docket No. 305, Exhibit 5; Docket No. 324, Exhibit 3; Docket No. 329, Exhibit 8.)

5. The Popular Democratic Party ("PPD") won the elections in the year 2000. As a result, Deliz returned from his voluntary separation effective December 31, 2000 to PREPA where he was reinstated by Miguel Cordero, then Executive Director of the agency, to the position of Juridical Investigator I with a yearly salary of $35,002.50. The per hour salary was $17.95. (Docket No. 305, Exhibit 6; Docket No. 324, Exhibit 4; Docket No. 329, Exhibits 7 & 8.)

6.  During the first months of the PDP administration, Blanes, PREPA's Director of Human Resources, requested several legal opinions from external law firms to evaluate the legality of the personnel transactions that took place at PREPA during the last few months of the prior New Progressive Party ("NPP") administration.(Docket No. 305, Exhibits 7 & 8; Docket No. 324,

Civ. No. 02-1869(PG)                                                    Page 3

Exhibits 8 & 9 at pp.55-59; Docket No. 329, Exhibits 3 & 4.)

    7. One of the legal opinions concluded that the personnel transactions
were illegal, yet Blanes, as Director of Human Resources, decided to accept
as legal the personnel transactions and proceeded to analyze if the positions
to which the employees were reinstated were pursuant to regulations. (Docket
No. 305, Exhibits 7, 8, & 9; Docket No. 329, Exhibit 7.)

    8.  The analysis was performed by Mr. Anibal Hernandez a Salary
Specialist at PREPA. Mr. Hernandez prepared a table where he identified 91
personnel transactions that were performed during the electoral prohibition.
This table included the following information: name, social security number,
trust position held before the elections of 2000, salary scale, salary in
trust position, last career position, salary scale in last career position,
position to which the employee was reinstated to, date the employee was
reinstated, percent of salary increase in reinstatement, and history of
position in which the employee was reinstated. (Docket No. 305, Exhibits 10
& 12; Docket No. 329, Exhibit 7.)

    9. After the personnel transactions were identified by Anibal Hernandez,
he proceeded to analyze whether the positions to which the employees had been
reinstated to were assigned pursuant to regulations and/or whether their
assigned salaries corresponded to the salaries to which the employees were
entitled to when employees returned from trust to career positions. (Docket
No. 305, Exhibits 9 & 12; Docket No. 324, Exhibit 9 at 63.)

    10.  Out of 91 personnel transactions, only 33, of all the transactions
that took place during the two months prior and after the elections, were
modified either by a change of position where the employee was reinstated
and/or in the salary assigned. (Docket No. 305, Exhibits 9 & 12.)

    11. Ms. Blanes, as PREPA's Director of Human Resources, presented the
decision to reduce the salaries to PREPA's Governing Board, addressing the
economical impact the illegal salaries would have in the public corporation.
For example, pursuant to the presentation, the Juridical Advisor was
reinstated to an Attorney II position and from a salary of $88,920.00, the
employee was reinstated with a salary of $84,474.00. Pursuant to Mr. Hernandez
analysis, the correct corresponding salary should have been $52,084.00 thus
creating a difference of $32,390.00 per year. (Docket No. 305, Exhibit 13 at
4.) Given this difference in salary, the economic impact by the year 2009,
under the merit system would have been $182,306.00 and under the performance
valorization system would have been $372,205.00.(Id. at 12.)

    12. In Deliz' case the analysis performed by Mr. Hernandez concluded
that the salary assigned to him by Miguel Cordero, then Executive Director,
of $17.95 per hour exceeded by 16.48% the salary that corresponded to him
pursuant to PREPA' s regulations. (Docket No. 305, Exhibit 12.)

    13. On June 6, 2001, co-defendant Rosario issued a letter addressed to
Deliz where plaintiff's salary was reduced to $15.41 per hour effective June
24, 2001. The reason expressed for the reduction was the abuse of discretion
from the past Executive Director in assigning plaintiff a salary in violation
of applicable statutes and regulations and the basic principles of public
administration. (Docket No. 305; Exhibit 14; Docket No. 329, Exhibit 7.)

    14.  As a result of the reduction in salary by Rosario, Deliz filed an

administrative claim on August 21, 2001. (<u>See</u> Docket No. 329; Exhibit 8 at 6.) Plaintiff claimed initially that he was entitled to a salary of $19.60 (Docket No. 305, Exhibit 15); and later claimed that he was entitled to a salary of $22.46 per hour. (Docket No. 305, Exhibit 16.)

15. The Administrative Law Judge, Honorable Angel Rossy Garcia, issued a Resolution in Deliz' administrative claim. (Docket No. 305, Exhibit 17; Docket No. 324, Exhibit 13; Docket No. 329, Exhibits 8 & 9.) He concluded that Deliz as a regular employee in the career service at the time he requested and had been approved an Authorized Voluntary Separation from Employment and Salary for a Specific Period, was entitled to all the rights established in Article 11.4 of the Personnel Regulations for Non-Union Career Employees. Article 11.4 recognizes the absolute right of reinstatement into the career service, with a regular status, as an employee who has taken a position of trust and after being separated from said position, wishes to rejoin the career service. Furthermore, the Administrative Law Judge concluded that Deliz was entitled to a salary adjustment of $22.46 per hour, effective on June 24, 2004. (Docket No. 329; Exhibit 9 at 11-12 & 17; <u>see also</u> Docket No. 305, Exhibit 17, Docket No. 324, Exhibit 13.)

16. PREPA appealed the decision to the Puerto Rico Court of Appeals which affirmed the Administrative Law Judge's decision and denied the reconsideration request. PREPA then appealed the decision to the Puerto Rico Supreme Court which also denied the Certiorari and the Reconsideration requested as well. (Docket No. 329, Exhibits 11, 12, 13, & 14; <u>see also</u> Docket No 305, Exhibits 18 & 19.)

17. After the Supreme Court denied the request for reconsideration, Deliz' position was published. (Docket No. 305, Exhibit 20 at 76; Docket No. 329, Exhibits 15 & 16.) He was instructed to apply for the position but Deliz did not inasmuch as the administrative decision had granted him said position without his need to apply for it. (Docket No. 305, Exhibit 20; Docket No. 329, Exhibit 17; Docket No. 324; Exhibits 19& 20.)

18. Plaintiff was assigned a permanent position of Juridical Investigator II without competing for the same because the administrative decision had ruled he was entitled to that position. (Docket No. 305; Exhibit 21; Docket No. 330, Exhibit 22.)

19. After the filing of the captioned case, Deliz has applied for several positions at PREPA. (Docket No. 305, Exhibit 22.) Defendants denied Deliz' applications based on the following criteria:

| POSITION | NON SELECTION CRITERIA |
|---|---|
| a. EEO Administrator | Didn't request acknowledgment of outside experience |
| b. Auxiliary Supervisor | No experience |
| c. District Manager (4) | No related experience |
| d. Supervisor- Budget Office | No related experience |
| e. Superintendent-Conservation Program | Didn't request acknowledgment of outside experience<br>No related experience |

| f. Museum Administrator | No related experience |
|---|---|
| g. Operations Supervisor | No related experience / expired license |
| h. Supervisor- Purchasing Office | No experience |
| I. Purchase Manager- | No related experience |
| j. Supervisor-Contracts of Electrical Maintenance | No related experience |
| k. Warehouse Administrator | No experience |
| h. Aux. Chief-General Services | No related experience |

20.  On January 3, 2003, Governor Sila M. Calderon signed Law Number 41 to amend Article 3.002 of the Government Ethics Law.  Said law empowered the Office of Government Ethics to enact a regulation to preclude government employees from having insignias, pictures and/or any other memorabilia at their work place that represents political parties or identifies and/or directly or indirectly promotes electoral or political interests that could disrupt the work activities. The regulation became effective on February 7, 2004. On February 11, 2004, co-defendant Rosario sent a Memorandum to all of PREPA's employees informing them of the law and the newly enacted regulation. (Docket No. 305; Exhibit 24.)

21. Deliz admitted in his deposition that he has approximately 12 or more pictures in his cubicle, which included at least two pictures of him with Gov. Pedro Rosello and Maga Nevarez, a picture of Luis A. Ferre, Mr. Dole, the President of Colombia, the President of Guatemala, and other pictures of his family. He also had several United States flags.  Deliz was asked to remove these things from his cubicle. (Docket No. 305, Exhibits 20 & 25.)

22. Deliz explained at his deposition that he had been asked to remove a set of blue Christmas lights which he had hung at his work station.  Mr. Felix Perez, who ordered him to do so, did not explain why he had to remove the lights and simply told Deliz that he knew why he had to take them down. During his deposition, Deliz was asked why he had brought the blue lights and he indicated that he liked the color blue and that his house had been decorated in blue for Christmas and that he had some decorations left over from his home so he brought them to his office. (Docket No. 305, Exhibit 205 at 50; Docket No. 330; Exhibit 34 at 50 & 51.)

23  At some point after 2002, Ms. Isabel Nieves, Deliz' immediate supervisor, decided to rearrange the working area of her 8 investigators. Deliz was reassigned to a new cubicle. (Docket No. 305; Exhibit 26; Docket No. 330; Exhibit 27.)

## **DISCUSSION**

### I.  **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and Local Rule 503; a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. See Alamo Rodriguez v.

Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003). The
adversely affected party may "contest the Magistrate Judge's report and
recommendation by filing objections 'within ten days of being served' with a
copy of the order." United States of America v. Mercado Pagan, 286 F.Supp.2d
231, 233 (D.P.R. 2003)(quoting 28 U.S.C. §§ 636(b)(1).) If objections are
timely filed, the District Judge shall "make a de novo determination of those
portions of the report or specified findings or recommendation to which [an]
objection is made." Felix Rivera de Leon v. Maxon Engineering Services, Inc.,
283 F.Supp.2d 550, 555 (D.P.R. 2003). The Court can "accept, reject, or
modify, in whole or in part, the findings or recommendations made by the
magistrate", however, if the affected party fails to timely file objections,"
'the district court can assume that they have agreed to the magistrate's
recommendation'." Alamo Rodriquez, 286 F.Supp.2d at 146 (quoting Templeman v.
Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985).

## II.  SUMMARY JUDGMENT

A motion for summary judgment is governed by Rule 56(c) of the Federal
Rules of Civil Procedure, which allows disposition of a case if "the
pleadings, depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine issue as
to any material fact and that the moving party is entitled to a judgment as
a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.
2000). Material facts are those that are outcome-determinative under the
governing substantive law. Morrisey v. Boston Five Cents Savings Bank, 54
F.3d 27, 31 (1st Cir. 1995). To be successful in its attempt, the moving
party must demonstrate the absence of a genuine issue as to any outcome-
determinative fact in the record, DeNovellis v. Shalala, 124 F.3d 298, 306 (1
st Cir. 1997), through definite and competent evidence. Maldonado-Denis v.
Castillo Rodriquez, 23 F.3d 576, 581 (1st Cir. 1994). If the non-movant
generates uncertainty as to the true state of any material fact, the movant's
efforts should be deemed unavailing. Suarez v. Pueblo Int'l, 229 F.3d 49, 53
(1st Cir. 2000). Nonetheless, the mere existence of "some alleged factual
dispute between the parties will not affect an otherwise properly supported
motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
247-48 (1986). The Court must examine the facts in the light most favorable

Civ. No. 02-1869(PG)                                                    Page 7

to the non-movant, indulging that party with all possible inferences to be derived from the facts.  See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002).  Nonetheless, when evaluating the evidence before it, the Court may safely ignore "conclusory allegations, improbable inferences and unsupported speculation."  Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000).

   **III.  ANALYSIS**

   **A.  Deliz' reinstatement and salary adjustment political discrimination claim**

   The Magistrate Judge concluded that summary judgment should be granted as to all defendants with the exception of defendant Blanes because there were issues of material fact that precluded granting summary judgment in her favor. Defendants object arguing Blanes is entitled to qualified immunity. To the contrary, plaintiff avers that she was responsible, as PREPA's Director of Human Resources, for the discriminatory actions at issue[1].

   In order to establish his prima facie case, plaintiff must show that there is a causal connection linking the allegedly discriminating conduct to his political beliefs.  See LaRou v. Ridlon, 98 F.3d 659, 662 (1st Cir. 1996). If plaintiff meets his burden, then the defendants must show, by a preponderance of the evidence, that they would have reached the same decision regardless of his political affiliation.  See Mt. Healthy City Sch. Dist. Bd.v. Doyle, 429 U.S. 274, 287 (1977); Padilla-Garcia v. Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000).

   Here, the Magistrate Judge found that Blanes did not verify the contents of or requested supporting evidence of the employment transaction study

---

   [1]Plaintiff also objects to the Magistrate Judge's recommendation with regards to the remaining defendants. He, however, raises the same arguments he had raised in his opposition to defendants' motion. Inasmuch as plaintiff is simply rehashing arguments already considered by the Magistrate Judge, the Court shall not consider his objection.  Upon reviewing the Magistrate Judge's findings with regards to the remaining defendants, the Court adopts the recommendation and grant summary judgment as to the political discrimination claim against them.
   Plaintiff also objects arguing that the Court should consider the fact that defendants requested new legal opinions from the law firm of Fiddler, Gonzalez & Rodriguez without a written contract which is quite unusual in a public corporation such as PREPA and is in clear violation of the government's and the Comptroller's norms and regulations. Whether there existed a written contract between defendants and the law firm has nothing to do with whether Deliz was the victim of political discrimination.  Furthermore, Maria Mendez declared in her depostiion that the contract between PREPA and the law firm had been an oral and not a written contract which, pursuant to Puerto Rico law, is valid.  Whether it is in violation of PREPA's norms or regulations is beyond the scope of this litigation and in no way alters the Court's conclusion. (See Docket No. 324, Exhibit 9.)

performed by the personnel specialist, Mr. Anibal Hernandez, which eventually served as a basis to reduce Deliz' salary. Furthermore, Blanes did not discuss individual cases with PREPA's Executive Director; or provide a list of employees whose transactions and/or salaries were questioned or any supporting documentation. In light of theses issues of facts, the Magistrate Judge recommends denial of defendants' motion as to Blanes. Defendants claim, however, that these conclusions precisely demonstrate the unbiased intervention and detached participation of Blanes in the analysis of the personnel transactions that were modified. In the alternative they argue she is entitled to qualified immunity and point out two District Court decisions that addressed the same employment transaction study and where the Court found that Blanes actions were not politically motivated.

A review of the evidence in the case shows that defendants took on a costly and burdensome effort to evaluate the reinstatements and determine what remedial actions could most efficiently solve the problem of having ninety-one probably illegally appointed employees.  Defendants consulted a law firm, Fiddler, Gonzalez & Rodriguez to garner advice as to their belief that the reinstatements were illegal.  They also reviewed the legal opinion of the Aldarondo Girald Law Offices, on which the prior administration had based its decision to make the reinstatements.  They furthermore undertook a careful review of the positions the 91 employees were placed into and the salaries they were assigned.  Defendants compared the salaries given to these employees and compared them to the salaries that would have been the natural consequence of separate individuals having held the career positions assigned to them. Indeed, although Blanes had a legal opinion at hand stating that the 91 appointments were illegal, she nevertheless decided to evaluate each transaction and requested that Mr. Anibal Hernandez prepare a study based on objective criteria and PREPA's regulations. The two evaluations performed by defendants, which they stated was done to deal with a financial drain placed upon the PREPA due to the illegal reinstatements, (see Docket No. 305, Exhibit 12 & 13), is a clear example of a non-discriminatory motivation for the employment action taken with regards to plaintiff.

Another fact worth mentioning is that although the 91 appointments were made by the prior administration and one can assume that all 91 employees were

Civ. No. 02-1869(PG)                                                    Page 9

members of the NPP, only 33 of the 91 suffered some adjustment to their salary
or position.   This fact further shows that defendants' actions were not
politically  motivated  but  based  on  unbiased  information  and  objective
criteria. In sum, the Court disagrees with the Magistrate Judge in that there
are issues of fact precluding summary judgment as to defendant Blanes.

        Furthermore, a review of the two District Court decisions defendants have
made  reference  to  further  supports  our  conclusion.   In  the  case  of  <u>Colon
Santiago V Rosario</u>, Civil No. 01-2722(PG), in which Blanes was a co-defendant
as well, this Court found that plaintiffs provided no evidence to substantiate
their  allegations  that  political  discrimination  was  the  true  motive  for
defendants'  actions  based  on  the  same  employment  transaction  study  prepared
by Mr. Anibal Hernandez. (<u>See</u> Opinion and Order dated March 9, 2004, Docket
No. 116.) Moreover, in <u>Colon-Ortiz v. PREPA</u>, Civil No. 02-1342(JP), in which
Blanes  was  also  named  as  a  co-defendant,  the  Court  found  that  PREPA's,
Rosario's  and  Blanes'  decisions  were  based  on  an  impartial,  objective,  and
unbiased  analysis  performed  by  the  salary  specialist,  Mr.  Anibal  Hernandez
based on PREPA's regulations.   The Court concluded that the evidence failed
to raise an inference that political animus substantially motivated defendants
to reclassify the named plaintiff. (<u>See</u> Opinion and Order dated October 16,
2003, Docket No. 111.)

        Twice  this  District  Court  has  passed  judgment  on  Blanes'  actions
regarding reclassification of employees pursuant to Mr. Hernandez' employment
transaction  study  and  has  found  that  political  animus  was  not  the  motivating
factor.  Here, the evidence likewise shows Blanes decision to reclassify Deliz
was not politically motivated. Accordingly, we do not adopt the Magistrate
Judge's recommendation with regards to Blanes.

        Because we find that plaintiff's political discrimination claim against
Blanes  fails,  we  need  not  discuss  the  qualified  immunity  defense.    We
therefore, do not adopt the Magistrate Judge's recommendation with regards to
this issue either.

        Wherefore, the Court approves and adopts in part the Magistrate Judge's
recommendation and grants summary judgment as to all defendants including
Blanes  regarding  Deliz'  reinstatement  and  salary  adjustment  political
discrimination claim.

Civ. No. 02-1869(PG)                                                    Page 10

## B. **Deliz' due process claim**

To prevail in a procedural due process claim plaintiff must show that he had a property interest as defined by state law, and that defendants, acting under color of state law, deprived him of that interest without a constitutionally adequate process. PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 542-43 (1985); Board of Regents v. Roth, 408 U.S. 564, 574,(1972).

Defendants claimed that because Deliz' reinstatement took place during the electoral prohibition, it was illegal and therefore, he lacked any property interest over his employment.

The Magistrate Judge concluded, however, that the issue of whether Deliz had an entitlement over his position as a career employee or not was already answered in the affirmative in the administrative and appellate proceeding. Therefore, pursuant to the doctrine of *res judicata*, defendants were precluded from claiming otherwise or alleging that his appointment was illegal as they had waived the argument by failing to raise it in the administrative proceedings.

Defendants do not object to the Magistrate Judge's conclusion. They argue instead, that if the due process claim is barred by *res judicata*, plaintiff's political discrimination claim should also be barred.

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 327, n. 5 (1979). "Res judicata generally binds parties from litigating or relitigating any issue that was or could have been litigated in a prior adjudication and prevents claim splitting." Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 42 (1st Cir.1985)(internal citations omitted). Federal courts "must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." Migra v. Warren City School District Board of Education, 465 U.S. 75, 81 (1984)[2]. The "applicable collateral estoppel rules are those from the

---

[2] The Full Faith and Credit statute states that "judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories ... as they have by law or usage in the courts of such State [or] Territory ... from which they are taken." 28 U.S.C. § 1738; see Baez-Cruz, 140 F.3d at 28-29; see also 48 U.S.C. § 734 (providing that unless otherwise

Civ. No. 02-1869(PG)                                                     Page 11

state from which judgment is taken ." <u>Pastor-Ginorio v. R & G Mortg. Corp.,</u>
<u>Inc.</u>, 371 F.Supp.2d 89, 92 -93 (D.P.R. 2005)(citing <u>Kremer v. Chemical Constr.</u>
<u>Corp.</u>, 456 U.S. 461, 481-82 (1982)). Pursuant to Article 1204 of the Puerto
Rico Civil Code, "it is necessary that, between the case decided by the
sentence and that in which the same is invoked, there be the most perfect
identity between the things, causes, and persons of the litigants, and their
capacity as such." 31 P.R. Laws Ann. § 3343. See <u>Baez-Cruz v. Municipality of</u>
<u>Comerio</u>,  140 F.3d 24, 28 (1st Cir. 1998); <u>Pastor-Ginorio</u>, 371 F.Supp.2d at
93.

     As the Magistrate Judge adequately concluded, the challenges to Deliz'
reassignment and acquired benefits were disposed of by the administrative
examiner. Therefore, defendants are barred from arguing its illegality. With
regards to the political discrimination claim, the Court has carefully
reviewed all the documents submitted by the parties with regards to the
administrative case and finds that the administrative law judge's decision has
nothing to do with whether defendants' decisions were politically motivated.
The administrative ruling determined the rights and benefits Deliz was
entitled to, and had been deprived of, pursuant to PREPA's regulations.
Defendants may not rest on the doctrine of *res judicata* to argue that
plaintiff's political discrimination claim is barred inasmuch as there is no
perfect identity of causes between the two cases in this regard. Defendants
simply fail to raise any compelling argument to show otherwise. Accordingly,
we adopt the Magistrate Judge's recommendation and DENY summary judgment as
to the due process claim.

### C. <u>Deliz' Hostile Work Environment claim</u>

     To prevail in his hostile-work environment claim, plaintiff must
establish that: (1) he belongs to a protected group; (2) he was subjected to
unwelcome harassment; (3) the harassment was based on his political
affiliation; (4) the harassment affected a term, condition, or privilege of
employment; and (5) the employer knew or should have known of the harassment
and failed to take remedial action. <u>Lopez Hernandez v. Municipality of San</u>
<u>Juan</u>, 206 F.Supp.2d 243, 249 (D.P.R. 2002).  "The evaluation of whether
conduct raises to the level of becoming a hostile-work environment must be

_____

specified, federal statutes applicable to states apply to Puerto Rico).

Civ. No. 02-1869(PG)                                              Page 12

done on a case-by-case basis." <u>Id.</u>

     The Magistrate Judge concluded that plaintiff had raised sufficient issues of material fact to warrant denial of defendants' motion.  Defendants' objection to the Magistrate Judge's determination is simply a rehashing of the arguments they had raised in their motion for summary judgment.  Therefore, the Court considers the recommendation as unopposed.  <u>See</u> <u>Sackall v. Heckler</u>, 104 F.R.D. 401, 402-03 (1st Cir. 1984)(holding that an objection of this sort is no objection at all and the Report should be approved for this reason alone, in absence of clear error on the face of the record[3]).

     The Court has, nevertheless, reviewed the record and concurs with the Magistrate Judge in that plaintiff has raised issues of fact regarding several events that indeed create doubts as to the intention behind certain actions by the defendants. For example, as the Magistrate Judge correctly pointed out, with regards to the pictures and decorations in Deliz' cubicle, the law prohibiting that such things be placed at the workplace was passed much later than this complaint was filed. (<u>See</u> Docket No. 305; Exhibit 24.)

     Another event worth mentioning is the office rearrangement allegation. At some point after 2002, Ms. Isabel Nieves, Deliz' immediate supervisor, decided to rearrange the office area where the eight investigators she supervised worked. (Docket No. 305; Exhibit 26; Docket No. 329; Exhibit 27.) The reason given for said redistribution was that a lot of office space was being wasted by the way in which the space was distributed. The rearrangement sought to secure a place to be used as an office where all the evidence of all trial attorney was kept locked.  Ms. Nieves claims that after the redistribution the eight investigators had approximately the same area of working space. (Docket No. 305; Exhibit 26.)  However, Ms. Raquel Ortiz-Robles, a PREPA co-worker, stated in her deposition that the office Deliz was assigned was smaller to the one he originally had and that she thought Deliz was uncomfortable and could barely move given that he was a big person and could barely fit through the door.(<u>See</u> Docket No. 330, Exhibit 37.)

_____

     [3] "[I]f the magistrate system is to be effective, and if profligate wasting of judicial resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel consistent with the [Federal Rules of Procedure], can in good conscience complain to the district judge that and objection to a particular finding or recommendation is 'well grounded in fact and is warranted by existing law or . . . reversal of existing law. . .'.". <u>Sackall</u>, 104 F.R.D. at 403.

Civ. No. 02-1869(PG)                                               Page 13

     Finally, defendants insisted on publishing the position occupied by Deliz
as vacant even after an Administrative Law Judge and the Courts of the
Commonwealth of Puerto Rico had adjudicated to Deliz said position. Deliz
asked them to withdraw the publication in light of the administrative decision
but they indicated that because the ten-day period to request yet another
reconsideration had not elapsed, they would not withdraw the publication.
(Docket No. 329, Exhibits 15, 16, & 17.)  The Court finds that defendants'
proffered reason for not withdrawing the publication unconvincing.  Yet,
although this may be probative of a discriminatory animus, the Court cannot
make such credibility determinations at this juncture.  It is the jury's role
to weigh credibility.  We therefore decline to grant summary judgment.

          Summary procedures should be used sparingly in ...
          [cases] where motive and intent play leading roles ...
          It is only when the witnesses are present and subject
          to cross examination that their credibility and the
          weight to be given their testimony can be appraised.
          Trial by affidavit is no substitute for trial by jury
          which so long has been the hallmark of even handed
          justice.

Oriental Financial Group v. Federal Ins. Co., 309 F.Supp.2d 216, 220 (D.P.R.
2004)(internal quotations omitted).

     In sum, the Court finds there are issues of fact precluding summary
judgment and thus adopts the Magistrate Judge's recommendation and denies
summary judgment regarding Deliz' hostile work environment claim.

     D. **Evelyn Orengo's claims**

     Defendants also request dismissal of plaintiff Orengo's claims of
political discrimination arguing her allegations are unsupported and fail to
show their actions were pretextual.  In support of their claim, they point to
numerous declarations in her deposition as probative of the absence of issues
of material fact. However, they failed to include the deposition in the list
of exhibits filed with their list of uncontested facts (Docket No. 305).
Accordingly, the Magistrate refused to consider the deposition in accordance
with the strictures of Fed.R.Civ.P. 56(c).

     Defendants object arguing that they had always been under the impression
that the deposition had been included in the exhibits filed.  Additionally,
they point out that the Court had a courtesy copy of the deposition in the
courtesy copy of the exhibits they had filed with the Court.  When this

Civ. No. 02-1869(PG)                                                    Page 14

omission was brought to their attention, they requested an extension of time to file the deposition as an exhibit to their motion for summary judgment. As of this day, they have neither filed the exhibit nor requested further extensions of time to do so.   Accordingly, we will not consider Orengo's deposition as it is not part of the record.

Upon reviewing the record, the Court adopts the Magistrate Judge's recommendation and denies defendants' motion as to Orengo's claim.

<u>CONCLUSION</u>

WHEREFORE, in light of the foregoing, the Court **APPROVES AND ADOPTS IN PART** the Magistrate Judge's Recommendations and **GRANTS IN PART AND DENIES IN PART** defendants' motion: granted as to Deliz' reinstatement and salary adjustment political discrimination claim; denied as to his due process and hostile work environment claim; and denied as to Orengo's political discrimination claim.   Partial Judgement shall be entered accordingly.


IT IS SO ORDERED
In San Juan, Puerto Rico, July 21, 2005.


                                    S/ JUAN M. PEREZ GIMENEZ
                                    U.S. DISTRICT JUDGE